IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs November 24, 2009 at Knoxville

**CHRISTOPHER N. ORLANDO v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Dekalb County**
**No. 02-126(A)    Leon C. Burns, Judge**

---

**No. M2008-01621-CCA-R3-PC - Filed Janaury 4, 2010**

---

The petitioner, Christopher N. Orlando, appeals from the summary dismissal of his petition for post-conviction relief.  Holding that the petition is time-barred, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Christopher N. Orlando, Only, Tennessee, pro se.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Randall A. York, District Attorney General; and William M. Locke, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In April 2004, a Dekalb County Criminal Court jury convicted the petitioner, Christopher N. Orlando, of facilitation of first degree murder for his role in the shooting death of the victim, Josh Murphy.  This court affirmed the conviction and the accompanying 35-year sentence on August 3, 2006, and the petitioner did not file an application for permission to appeal to our supreme court. *See Christopher Nicholas Orlando v. State*, No. M2005-01767-CCA-R3-CD (Tenn. Crim. App., Nashville, Aug. 3, 2006).  The facts of the case, as summarized by this court on direct appeal, are as follows:

> On September 18, 2002, the body of Josh Murphy was found on Backbone Ridge off Highway 70 between Sparta and Smithville in DeKalb County.  The deceased had sustained multiple gunshot wounds to the face.  Both fired and unfired .12 gauge shotgun shells, as well as wadding, were found at the scene.  During the investigation, Tennessee Bureau of Investigation (TBI) Agent Bob

Krofssik traveled to Kentucky four or five days after the discovery of the body and interviewed Melvin Turnbill. Turnbill confessed to participating in the murder and implicated the [petitioner] as the shooter.

. . . . At trial, Turnbill testified that on September 14-15, 2002, he went to Backbone Ridge to manufacture methamphetamine with his friend Josh Murphy. When it started raining, the two gathered their equipment and went to the home of Turnbill's girlfriend, Robin Baker. Murphy left around 2 or 2:30 A.M., and the [petitioner] arrived at Baker's home around 4:00 A.M. and spent the night. Around 9 A.M., Turnbill discovered that a half-gallon jar of meth oil was missing. Turnbill advised Agent Krofssik, "I told [the petitioner] to go get my gun that he was keeping for me, and I was going to kill whoever got my meth oil." Turnbill reported that the two departed in the [petitioner]'s car for James Reeves' house where the victim was staying. The [petitioner] escorted the victim from the house and took him to Turnbill, and the threesome drove to Robin Baker's house. At Baker's house, Turnbill borrowed a truck and drove the victim back to Backbone Ridge. Meanwhile, the [petitioner] returned to Reeves' house to compare a sample of the methamphetamine Turnbill had manufactured to that which the two suspected Murphy of stealing. The [petitioner] arrived at Backbone Ridge an hour to an hour and a half later and reported a match. Turnbill testified that the [petitioner] announced, "I went and got your gun" and asked "if [Turnbill] wanted to do it or if [Turnbill] wanted [the petitioner] to do it." Turnbill responded that he would do it, and he asked the victim if he had stolen the meth oil. The victim ran around the vehicle in an attempt to hide and denied any responsibility. Meanwhile, the [petitioner] took the pump shotgun from Turnbill and started shooting. The victim charged the [petitioner] and knocked him over, but the [petitioner] continued to fire. Turnbill stated that at this point, he ran to his truck. The [petitioner] threw the shotgun in the back of the truck, and Turnbill drove to his girlfriend's house. He took the truck, gun, and meth lab to a friend's house for safekeeping. Two days later, Turnbill returned and asked for the gun. Turnbill left for Kentucky soon after the victim's body was found.

*Id.*, slip op. at 1-2.

On April 4, 2008, the petitioner filed a petition for post-conviction relief alleging that the rulings in *Cunningham v. California*, 549 U.S. 270, 127 S. Ct. 856 (2007), and *State v. Gomez*,

-2-

239 S.W.3d 733 (Tenn. 2007) (*Gomez II*), should "be applied retroactively to invalidate and/or void his [s]entence." Recognizing that he had filed his petition outside the one-year statute of limitations, the petitioner asserted that the court could consider his claim because it was based upon the "new constitutiona[l] right established by *Cunningham* and *Gomez II*." In a written response to the petition, the State asserted that "any *Blakely v. Washington* issues cannot be applied retroactively, therefore there is no relief from the statute of limitations." The post-conviction court agreed with the State, ruling, "[*Blakely v. Washington*] and its progeny does not apply retroactively in a petition for [p]ost[-]conviction relief and therefore does not create an exception to the one-year statute of limitations."

"[A] person in custody . . . must petition for post-conviction relief . . . within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken." T.C.A. § 40-30-102(a) (2006). The statute of limitations for filing a post-conviction petition is jurisdictional. *See id.* § 40-30-102(b) ("No court shall have jurisdiction to consider a petition filed after the expiration of the limitations period unless [certain statutory prerequisites are met]."). Our supreme court has held that "the one-year statutory period is an element of the right to file a post-conviction petition and that it is not an affirmative defense that must be asserted by the State." *State v. Nix*, 40 S.W.3d 459, 464 (Tenn. 2001). Thus, "it is incumbent upon a petitioner to include allegations of fact in the petition establishing either timely filing or tolling of the statutory period," and the "[f]ailure to include sufficient factual allegations of either compliance with the statute or [circumstances] requiring tolling will result in dismissal." *Id.*

A petition for post-conviction relief filed outside the one-year statute of limitations may nevertheless be considered if its allegations fall within three rather narrow exceptions:

> (1) The claim in the petition is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required. Such petition must be filed within one (1) year of the ruling of the highest state appellate court or the United States supreme court establishing a constitutional right that was not recognized as existing at the time of trial;
>
> (2) The claim in the petition is based upon new scientific evidence establishing that such petitioner is actually innocent of the offense or offenses for which the petitioner was convicted; or
>
> (3) The claim asserted in the petition seeks relief from a sentence that was enhanced because of a previous conviction and such conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid, in which case the petition must be filed

-3-

within one (1) year of the finality of the ruling holding the previous conviction to be invalid.

T.C.A. § 40-30-102(b)(1)-(3). Additionally, due process principles may, in very limited circumstances, require tolling of the post-conviction statute of limitations. *See generally Seals v. State*, 23 S.W.3d 272 (Tenn. 2000); *Burford v. State*, 845 S.W.2d 204 (Tenn. 1992).

Here, the petition for post-conviction relief asked that the petition be considered despite its untimeliness because the rulings in *Cunningham v. California*, 549 U.S. 270, 127 S. Ct. 856 (2007), and *State v. Gomez*, 239 S.W.3d 733 (Tenn. 2007) (*Gomez II*), established a new constitutional right not in existence at the time of the petitioner's trial. This court has repeatedly held that the rulings in the line of cases following *Blakely v. Washington*, including those in *Cunningham* and *Gomez II*, did not announce a new rule of law and are not, therefore, subject to retroactive application. *See, e.g.*, *Bobby Taylor v. State*, No. M2008-00335-CCA-R3-PC (Tenn. Crim. App., Nashville, July 14, 2009); *Ortega Wiltz v. State*, No. M2006-02740-CCA-R3-CD (Tenn. Crim. App., Nashville, Apr. 25, 2008), *perm. app. denied* (Tenn. Oct. 27, 2008); *Billy Merle Meeks v. Ricky J. Bell, Warden*, No. M2005-00626-CCA-R3-HC (Tenn. Crim. App., Nashville, Nov. 13, 2007), *perm. app. denied* (Tenn. Apr. 7, 2008). Thus, the post-conviction court did not err by dismissing the petition as time-barred.

Finally, the petitioner claims that, had the post-conviction court held an evidentiary hearing, he "would have established, through the testimony of his trial/appellate counsel" that counsel failed to advise him of his right to file a petition for post-conviction relief and the limitations on doing so. We need not belabor this argument because it is presented for the first time on appeal and therefore waived. *See* Tenn. R. App. P. 36; *State v. Johnson*, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996) ("Issues raised for the first time on appeal are considered waived.").

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE